David **KAPLAN**, individually and on behalf of all other employees similarly circumstanced, Plaintiff,

v.

Catherine J. **RUGGIERI**, Margaret S. Mac-Namara, Theodore Muzio, Gerald T. O'Boyle, Melvin Martin, Marguerite A. Donnelly, Robert M. Hendrick, Earl R. Woods, Paul S. Szabo, John C. Alexion, C. Carl Robusto; St. Vincent's College, a unit of St. John's University; St. John's University; Frederick E. Hueppe and Edward J. Miranda, as Co-Presidents of St. John's Chapter of The A.A.U.P.–F.A. at St. John's University (an indep. labor union), Defendants.

No. 81 CV 2059 (ERN).

United States District Court, E. D. New York.

Sept. 21, 1982.

David Kaplan, pro se.

Mendes & Mount, New York City, for non-Union defendants by Joan S. O'Brien, New York City; Herbert D. Schwartzman, Jamaica, N. Y., of counsel.

Henry T. Berger, New York City, for Union defendants.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

Plaintiff, David Kaplan, brought this action for damages, injunctive relief and a declaratory judgment. He asserts six distinct causes of action and alleges that jurisdiction is vested in this Court by virtue of section 301 of the Labor-Management Relations Act of 1947, 29 U.S.C. § 185 (1976), general federal question jurisdiction, 28 U.S.C. § 1331 (1976), the Declaratory Judgment Act, 28 U.S.C. § 2201 (1976), and the doctrine of pendent jurisdiction. His first claim requests that this Court construe the collective bargaining agreement (the "CBA") between defendant St. John's University (the "University") and the American Association of University Professors (the "Union") and render a declaratory judgment on the issue of whether a faculty member can file a grievance against his departmental chairperson. The second claim alleges that the Union breached its duty of fair representation when it failed to take one of plaintiff's grievances to arbitration. The third and fourth claims complain that the University and several of the named defendants violated the CBA when they selected defendant Ruggieri to be Acting Dean of St. Vincent's College and defendant MacNamara to be a departmental chairperson. The fifth claim asserts that plaintiff was wrongfully denied tenure by the University, and in the sixth claim he contends that the the University defamed his reputation when it published the reasons for his denial of tenure.

The facts in this case are not in dispute. Until May of 1982, plaintiff was employed as a full-time Assistant Professor of Business Law at St. Vincent's College of St. John's University. In October 1980, plaintiff applied for tenure. Pursuant to the CBA provisions governing tenure applications, his application was reviewed and considered by the Departmental Personnel and Budget Committee, which was composed of elected, tenured faculty members Muzio, O'Boyle and Martin. On October 24, 1980, plaintiff was notified by mail that he had been denied tenure by a 2 to 1 negative vote of the Committee. The October 24th letter stated that tenure was denied because of plaintiff's "A) Failure to evidence satisfactory qualities of personality and character. B) Failure to evidence willingness to cooperate with others in the achievement of the objectives of St. Vincent's College and St. John's University."

Plaintiff appealed this decision to the College Personnel Committee, which consisted of elected, tenured faculty members Donnelly, Hendrick, Szabo and Woods and Acting Dean Ruggieri. Plaintiff was informed that the Personnel Committee had sustained the denial of tenure by a memorandum dated December 11, 1980. The memorandum stated that the reasons for sustaining the decision were those stated in the October 24th letter. Copies of this memorandum were sent to the Academic Vice President of St. John's University, defendant Robusto, and the Acting Chairperson of the Division of Administration and Economics, defendant MacNamara. According to University regulations, the second adverse ruling on plaintiff's tenure application was final and unappealable. Plaintiff, however, sought and was denied the right to file a grievance against the University.

On January 14, 1981, the day prior to the first day of the spring 1981 semester, plaintiff was advised that he had been assigned to teach classes five days a week rather than his previous three-day work schedule. This new schedule conflicted with plaintiff's performance of non-University related obligations, which he did not wish to cancel.

As a result, plaintiff failed to meet his newly scheduled classes on January 15 and January 20, and the University acted to suspend him. Plaintiff then requested a "personnel conference" with the University president, which is required by University regulations before any disciplinary matter is referred to a University Senate Committee for investigation and possible formulation of written charges. Prior to the conference, plaintiff sought Union representation, to which he maintained he was entitled under recent Supreme Court labor law decisions. Although the Union president, defendant Hueppe, disputed such entitlement, a Union grievance officer represented plaintiff at the "personnel conference."

Thereafter, on February 11, 1981, the Union submitted a grievance on behalf of plaintiff challenging his schedule change. The grievance procedure is a multistep procedure leading to arbitration at step III. Plaintiff's grievance was appealed to step II, but was not pursued to binding arbitration.

When the relief requested was not forthcoming, plaintiff commenced this action. The case is now before the Court on defendants' motion for summary judgment. For the reasons given below, defendants' motion is granted.

Summary judgment may be rendered only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), F.R.Civ.P. Pursuant to the 1963 amendments, Rule 56(e) provides that when a motion for summary judgment is supported by proper affidavits (or by the other materials referred to in Rule 56(c)), "an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." As the Court of Appeals for this circuit has stated, once the movant has made the requisite showing,

"an adverse party may not rest upon mere conclusory allegations or denials. The party opposing the motion must set forth 'concrete particulars,' *Dressler v. The MV Sandpiper,* 331 F.2d 130, 133 (2d Cir. 1964), and cannot make a secret of his evidence, holding it close to his chest until the trial. *See Donnelly v. Guion,* 467 F.2d 290, 291 (2d Cir. 1972). It is not sufficient merely to assert a conclusion without supplying supporting arguments or facts in opposition to the motion. *Id.* at 293. *See Applegate v. Top Associates, Inc.,* 425 F.2d 92, 96 (2d Cir. 1970)." *Securities Exchange Commission v. Research Automation Corp.,* 585 F.2d 31, 33 (2d Cir. 1978).

In determining whether to grant a motion for summary judgment, the Court "cannot try issues of fact; it can only determine whether there are issues to be tried." *American Mfrs. Mut. Ins. Co. v. American Broadcasting-Paramount Theatres, Inc.,* 388 F.2d 272, 279 (2d Cir. 1967), *quoted in Securities Exchange Commission v. Research Automation Corp., supra,* 585 F.2d at 33. It must accept as true factual statements in the opposing party's affidavits, draw all permissible inferences in that party's favor, *Hill v. A–T–O, Inc.,* 535 F.2d 1349 (2d Cir. 1976), and resolve any doubts in favor of the latter, *American Mfrs. Mut. Ins. Co. v. American Broadcasting-Paramount Theatres, Inc., supra.* "The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Adv. Com. Note to Proposed Amendments to Rule 56(e), 31 F.R.D. 648 (1962). See generally *Applegate v. Top Associates, Inc., supra; Donnelly v. Guion, supra,* 467 F.2d at 292. Hence, a party may not retreat to "the mere allegations or denials of his pleading" in the face of "a motion for summary judgment made and *supported* as provided in ... [Rule 56]." Rule 56(e), F.R.Civ.P. (emphasis supplied).

Taking these factors into full consideration, the undisputed and sworn facts in the present record reveal that plaintiff's

allegations in his complaint do not state a claim upon which relief can be granted. The right plaintiff seeks to have declared in his first cause of action—the right to bring a grievance against a departmental chairman—must fail as it does not present a genuine and present controversy. While plaintiff alleges that the denial of tenure was wrongful, he does not allege that the then acting departmental chairman, defendant MacNamara, took part in the tenure decision. Plaintiff does not dispute defendants' contention that defendant MacNamara, as a non-tenured member of the faculty, was not eligible to vote on tenure applications and did not vote on plaintiff's application. Absent a relation between the claimed injury, the denial of tenure, and the relief sought, a declaration that a grievance may be brought against a departmental chairperson, no justiciable issue can be said to exist and any opinion would be no more than advisory.

As to plaintiff's second claim that the union breached its duty of fair representation as a result of its handling of his teaching-schedule grievance, plaintiff has failed to allege the necessary element of bad faith on the part of the Union. *Vaca v. Sipes,* 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967). It is plaintiff's burden to allege, as a threshold matter, some ill motive or arbitrary action on the part of the Union to support his claim. *Balowski v. United Auto. Workers,* 372 F.2d 829, 835 (6th Cir. 1967). The allegations in plaintiff's complaint, however, negate any possible inference that the Union acted in bad faith with regard to his grievance. While plaintiff alleges that the Union urged plaintiff to accept the scheduling change and initially asserted that his complaint was not subject to grievance-arbitration, he does not dispute defendant's contention that the grievance was processed by the Union.[1] Similarly, while plaintiff contends that the Union refused his request for a Union representative at his personnel conference with the University president, he does not deny defendant's statements that such representation was provided. Thus, plaintiff's second cause of action fails to state a claim for which relief can be granted. *See Lewis v. Greyhound Lines-East,* 555 F.2d 1053 (D.C.Cir.1977), *cert. denied,* 434 U.S. 997, 98 S.Ct. 635, 54 L.Ed.2d 491 (1978).

Plaintiff's third and fourth claims relating to the appointment of a dean and a departmental chairman must also be dismissed as plaintiff has failed to exhaust the exclusive grievance procedures established by the CBA. The relevant portions of the CBA specify the steps to be taken in handling a complaint by an aggrieved faculty member. The initial step in the procedure is the filing of a grievance with the appropriate chairperson or dean. Although plaintiff specifically denies that he failed to file a grievance concerning his denial of tenure, he does not deny that he failed to file a grievance concerning the appointment of defendants MacNamara and Ruggieri as departmental chairperson and college dean respectively. Plaintiff cannot circumvent the grievance procedures supplied by the CBA and consequently these claims must be dismissed. *Clayton v. United Auto. Workers,* 451 U.S. 679, 681, 101 S.Ct. 2088, 2091, 68 L.Ed.2d 538 (1981); *Republic Steel Corp. v. Maddox,* 379 U.S. 650, 652–53, 85 S.Ct. 614, 616, 13 L.Ed.2d 580 (1965).

Plaintiff's fifth claim apparently alleges that the University's denial of tenure was arbitrary and unreasonable and that the Union breached its statutory duty of fair representation in failing to pursue this complaint through the grievance-arbitration procedures. Both parties agree that Article II, § 2.4b of the CBA governs this dispute.

Section 2.4b specifically reserves to the Administration "the powers and authority" not modified by the CBA, with the caveat that those powers and authority not be exercised in an arbitrary, unreasonable or discriminatory fashion. Only if they are exercised in such a fashion does any claim

---

1. As the Court held in *Vaca, supra,* 386 U.S. at 192, 87 S.Ct. at 918, "a union does not breach its duty of fair representation ... merely because it settled the grievance short of arbitration."

related to them become subject to the grievance-arbitration procedure. In all other cases, the disposition of the complaint is governed by the University regulations.

■ Assuming that the employer's denial of tenure in this case was arbitrary or unreasonable, as plaintiff alleges, § 2.4b does not provide the full answer: Only those subjects not expressly excluded by Article XXXI, § 31.2 of the CBA are subject to the grievance-arbitration procedure. Section 31.2 expressly states that "the term 'grievance' . . . shall not include . . . complaints relating to the merits of appointment, reappointment, promotion, academic freedom and *tenure,* which matters are governed by the Statutes and practices of the Administration." Thus, the clear language of § 31.2 removes plaintiff's complaint from the grievance-arbitration procedure, and the Union cannot be said to have breached its duty to plaintiff in failing to instigate that procedure.

■ Since the merits of a tenure decision are excluded from the grievance procedure, plaintiff's only relief in this case was the appeal procedures provided by the University's regulations, which all the parties agree were faithfully carried out. Absent allegations that the denial of tenure violated either federal law or University regulations, plaintiff's fifth cause of action must be dismissed for failure to state a claim for which relief can be granted. *See Lieberman v. Gant,* 630 F.2d 60, 62 n.1 (2d Cir. 1980); *Faro v. New York Univ.,* 502 F.2d 1229, 1231–32 (2d Cir. 1974).

■ Plaintiff's sixth claim for defamation rests solely on pendent jurisdiction. Plaintiff agrees that, if he prevails on none of the other causes of action, this Court should not retain jurisdiction over the defamation claim. Accordingly, the sixth claim is dismissed for lack of subject matter jurisdiction.

Defendants' motion for summary judgment is granted in all respects.

SO ORDERED.